Case number 14-3015 et al., United States of America v. Hector Orjuela, Jr., Appellant. Mr. Hart for the Appellant, Mr. Goodhand for the Appellate. Good morning, Your Honor. The Police Department, my name is Dennis Hart. I'm here this morning on behalf of Hector Orjuela. And in the few minutes that I have, I'd like to ask the Court to consider three questions. The first question is, was there a viable defense to the District of Columbia indictment? The second question is, was this defense waived by operation of the plea by Mr. Orjuela? And the third, if it wasn't waived, should the plea be vacated for ineffectiveness of counsel? Now, the first question requires me to discuss a subject which I don't think I've ever discussed before in this Court. In foreign commerce. It's a measure perhaps of our shrinking world that it may occur to this Court again. Both parties agree that in foreign commerce is a critical phrase for this Court to decide. Both parties agree that in foreign commerce, at least in regards to the 2423 offense, is a subject which this Court has never resolved. I think it's fair to say that other courts and other jurisdictions have addressed this in different ways. I confess I find them a little confusing. But we believe 2423C, the subject which was of the D.C. indictment in this case, prescribes conduct only under limited circumstances. And the limited circumstances are if a defendant travels in foreign commerce. Now, I need to make clear there are two things which have to be understood in this regard. The first is the difference between commercial illicit sexual activity and noncommercial illicit sexual activity. Because as the Court has discovered or will discover, the other circuits that have considered this have used different basis for different controls. The second thing I need to make clear to the Court is that there is a difference between direct travel, direct foreign travel, and indirect foreign travel. I don't think there's any dispute that in this case, Mr. Haruela engaged in indirect foreign travel. He did leave the United States, but he went to Korea. And at some later time went to China, where the illicit sexual conduct occurred. We think the Court... How indirect does it have to be to trigger your concerns? That's a good question, and I don't have a good answer to that. All I can say is... Don't we need to have an answer to that? At least in order to rule for you. Yes, I think you do. Suppose he had stopped in South Korea for four hours. Would that have been okay? If he bought a ticket to Shanghai, yes. Oh, so that's the key. No, that's not the key. That's a fact. That's a what? That's a fact. We don't know how he got to China. There's nothing in the record to indicate when or how he got to China. So the ticket he bought was only to go to Korea? As far as the record shows, the only ticket he bought was to South Korea? Yes, I based that on the FBI affidavit for his arrest warrant. That's all we know. Well, what if the plane just stopped for refueling and he never even got off? Well, that's a different question. No, I think it's the exact same question. And that is, what exactly is the limit? How long is too long? I can't give the Court a bright-line answer. All I can say is that in this case, the defendant stopped in Seoul, South Korea, and there's no evidence of how he got to China, when he got to China, or in what way. What do you mean by stopped? Do you mean disembarked from the airplane? Yes. Or we just know that the plane stopped? Yes. No, he disembarked. Well, to get from Korea to China, he had to continue his travel in foreign countries, right? Yes, he did. He doesn't. So what's missing in the record? How he got, when he got, and the manner in which he arranged his travel from the United States, from Seoul to Shanghai. Or we don't even know that he went directly to Shanghai. I shouldn't make that assumption. He ended up in Shanghai where the illicit sexual conduct occurred, but we don't know that he went directly there from Seoul. Then what in the language of the statute suggests, all the statute says is he has to, quote, travel in foreign commerce. That's correct, Your Honor. That's all it says. That's all it says. We believe it says in foreign commerce is a phrase which this court has to interpret as commerce between the United States and a foreign country in which the illicit conduct occurs. If it occurs in a third country, it's commerce between two foreign countries. I thought you just said that if he bought his ticket to South Korea and was just there for an hour running between flights, your view is, and then the next flight is directly to Shanghai, your view is that that would not have a sufficient access? I would argue that it would not under certain circumstances. No, no. What circumstances? The circumstances may be that he didn't buy a ticket to Shanghai. He only bought a ticket to Seoul. When he got to Seoul, he bought another ticket. He rested. He stayed, he went to, uh, Suppose he bought both tickets in the United States. Suppose he bought a ticket to Seoul and a ticket from Seoul to Shanghai. Two separate tickets. That's a closer case. What is the answer? So is it your theory that Congress can only criminalize noncommercial illicit sex in countries connected to the United States with a nonstop flight? No. No. No. Okay. He can stop several times, and if his So if the plane lands and takes off, that's okay, but if it's a separate ticket, it isn't? Well, I would hesitate to draw so fine a line based on those bare facts. All I know are the facts of Mr. Auela's case, and the facts of Mr. Auela's case indicate that just as a good interstate or in foreign commerce comes to arrest, he came to arrest in Seoul, and there's no evidence that that changed until he was found in Shanghai by the Shanghai police. Isn't your argument, Counsel, that this is a jurisdictional question? I tried to make that argument, yes. You tried, and you give it up now? No, no, no, I'm not giving it up. The government wrote a very good section about how it's not jurisdictional, and I did happen to read the 11th Circuit case they based that on. It's only been adopted in the 11th Circuit, and they used the word jurisdiction in quotation marks as if there's something wrong with that. I do not believe the district court in this case had jurisdiction to try Mr. Auela for a crime which the Congress did not have the ability to criminalize on his facts. It could criminalize foreign travel to Seoul, but it couldn't criminalize the foreign travel, and that's without intent. Isn't that a substantive legal question rather than a jurisdictional issue? I believe they're mixed, John. I beg your pardon? I believe they're mixed because the district court, if it recognized that it could not enforce a law which the Congress could not make in Mr. Auela's context, could not try the case. It would have to dismiss it. I see my time is up. Unless there are questions, I'll sit down. Thank you. Thank you. David Goodham for the United States. I just want to start on a factual note, if I could. My opponent has suggested that the record demonstrates that his client arrived in Seoul and somehow or another we know from the record that he bought another ticket. I just want to clarify, the record is ambiguous on that point. I think the only thing in the record comes from the appendix at page 18, which is the FBI affidavit which says that travel records show that on or about August 13th, he departed the United States from LAX to Seoul, South Korea. He then arrived in China sometime thereafter but prior to September 11th. That's not critical to my argument. My overarching argument is that via the plain language of the statute, the defendant's conduct met this plain language. He traveled in foreign commerce. Even if you conclude that his travel ceased in Seoul, South Korea, which we don't concede, he still committed his sexual act, his illicit sexual conduct soon thereafter in China. And as Clark indicates from the Ninth Circuit, that temporal proximity between travel and foreign commerce, the chain between LA and Seoul, South Korea, and then the sexual illicit conduct soon thereafter satisfies the plain language of the statute. But Clark didn't. One, Clark had a dissent. Two, Clark dealt with commercial conduct and specifically said it was not addressing the provisions of Section C at issue here with noncommercial conduct. So my question to you is what nexus is required to the United States when you don't allege traveling with intent or purpose and you don't allege commercial conduct? I don't read Clark as standing for the proposition. That goes to the issue of the scope of Congress's Foreign Commerce Clause power. The phrase travel in foreign commerce, that's a statutory interpretation question. Well, I think we assume that Congress didn't mean to exceed its power under the Foreign Commerce Clause in doing that. Of course not. So I'm not sure that they can be separated the way you're trying to. Well, I think they can, number one. But number two, even if this Court disagrees, there's absolutely no authority out there that stands for the proposition that Congress has exceeded its Foreign Commerce Clause power in the noncommercial context. And I would cite to Pendleton from the Third Circuit. The Sixth Circuit has said, three-judge panel has said, it sure looks unconstitutional to them, but it wasn't plain error in the Sixth Circuit case. But three judges there all felt that the application to noncommercial conduct raised a serious constitutional question that on de novo review might well come out the other way. I understand that the Sixth Circuit has expressed skepticism of the scope of Congress's power under the Foreign Commerce Clause. A dissent in the Third Circuit and a dissent in the Ninth Circuit. Yes. But again, we have to step back and understand where we are in this context. We are assessing whether the defendant's counsel performed effectively when he did not file a motion to dismiss when he has absolutely no case law authority to suggest that this conduct did not meet the plain language of the statute. And our only point is that you can't fall— Do you have to have case law out there to be ineffective? I'm sorry? Do you have to have case law to be ineffective? I would suggest that, yes, to the extent that if you are suggesting the defendant did not perform within that vast swath of reasonable conduct and saying that your counsel performed deficiently when here we know that he got a very good plea deal for his client, I would suggest that absent case law supporting your proposition, then you have a very difficult road to hoe. It's really difficult, Clark, but at least in the qualified immunity context and deciding what's clearly unconstitutional, we don't actually require cases for something. Now, it's going to be a pretty rare case, but it can happen that something is just on its face, a violation of the warrant clause, even if no case has addressed it because no one else has been so silly as to make that violation of the warrant clause. Well, I think Your Honor hit the nail on the head when you used the phrase or a very rare case. Again, we start from the proposition that a defense counsel is acting reasonably and acting effectively. It's the defendant's burden to demonstrate that he's outside of that sort of vast swath of reasonable conduct, and I would suggest that when you can't point to a single precedent that goes your way and you can otherwise look at the plain language of the statute and conclude that this conduct satisfies that statute, then you are in that sort of Well, back to satisfying the statute, my original question is, can you tell me what the government's view is on whether a nexus to the U.S. is required, but does the phrase travel and foreign commerce require some nexus, and if so, what is the nexus? Because we have two very different time periods here. We have the November one, which seems to be less than a week, four or five days, but the August and September, which, at least according to the indictment and the plea, is about a one-month period. Clark, again, I think helpfully provides some significant guidance on this point to the extent that Clark said the approximate two-month gap there did not indicate Again, in a case where you had purpose in commercial conduct, and that's why they had the footnote going. If you don't have either of those things, we're not beginning to suggest that the outcome would be the same. Actually, I may be missing something, but I don't think Clark had purpose. That was a 24-23 C case. They certainly had commercial conduct. Weingarten had purpose. That was a 24-23 B case. From the government's perspective, the Third Circuit got this right when it said, look, Congress is permitted to regulate the channels of foreign commerce. Congress also has very broad, expansive powers under the Foreign Commerce Clause as distinguished from the Interstate Commerce Clause, where we know Lopez and Morrison have made some inroads into the breadth of Congress's power. In that sense, the Third Circuit, from the government's perspective, Bollinger, I might add, from the Fourth Circuit, also agrees with the government's The cert's still pending in that case, though, right? I believe their cert petition has been filed, yes. But, again, you put Bollinger together with Pendleton, you've got six judges who have said, look, the noncommercial prong satisfies the Foreign Commerce Clause and does not overreach. So, again, putting together the lack of case law demonstrating I don't think any of them said it in all cases. I think they said in their particular circumstances. I don't think any of them said in all cases. So, really, this question of how long the break in travel can be could be relevant either as a statutory or constitutional question, could it not? Again, I understand, Clark, to stand for the proposition, Pendleton was a six-month case. That is, the defendant flew to Germany and six months later he committed his illicit sexual conduct and that did not implicate constitutional concerns. So, again, you put Clark together with the Third Circuit case coupled with the granted unpublished decision out of the California District Court, which was a five-month gap. Again, circle back around to the notion, we would think that if you're going to allege that a defendant's counsel has performed deficiently in failing to file a motion to dismiss, counsel should be able to point to some sort of holding that would support that position. Otherwise, you know, you're engaged in sort of delaying tactics, which could Because there's a prejudice prong, too. For prejudice, if he had been, would he have faced the same sentencing guidelines range? I know the statutory is the same. If he'd only pled to Jane Doe 1 that happened in that one week in November, do you know? No, he would not have. They both have statutory maximums of 30 years. The third count from Maryland, a 15 mandatory minimum. So when you put the three counts together, the third count from Maryland had a 30-year max also. You could have gotten to 90 years. If taking your honors hypothetical, if you knocked out one of the counts, then you certainly wouldn't get to a 90-year statutory maximum of consecutive sentences. I think at most you get to 60 years. On the point of prejudice, though, again, it's hard to look at this counsel's conduct, both the first counsel and the second counsel, and not understand that this was very effective representation to the extent that the sentencing court specifically cited to the fact that the expeditious plea was a very prominent feature of her decision not to sentence a defendant all the way to the max, number one. Number two, we look at the bargaining that the defendant's counsel did. The government could have brought a number of other counts. Those were not brought. And then, of course, you have to very carefully look at the weight of evidence here. We had the defendant confessing in China. We had the defendant arriving in Chicago with a surfeit, a massive surfeit, of child pornography on his cell phone. And we have, of course, the forensic videotapes of the two children from China, the five-year-olds, who both defense counsel indicated on the record they had reviewed. You put all that together with the lack of case law supporting the defendant's position, and I would suggest you have what this court would say is conclusive evidence of an effective representation.  Thank you. Well, we don't have to determine whether it's effective. All we have to determine is it is not ineffective. Exactly, Your Honor. Okay, thank you. Did Mr. Herndon have any time left? Go ahead. Thank you, Your Honor. We dispute the claim that there's not a single precedent. Of course, we'll take the Clark dissent and run with that any time as a motion. But more importantly, Weingarten was a case decided several years before, which was a 2423B prosecution, I believe, that Weingarten Court did throw out. Do you have a case of ours that even remotely akin to your case in which we have held ineffective assistance in counseling? No, but... I didn't think so. I do have... I didn't remember any. I didn't mean to interrupt the Court. I do have a case from the District of Maryland that's in our brief, a Schmidt case, in which the District Court did find the failure to raise the in foreign commerce as ineffectiveness of counsel. I was going beyond this particular subject area. I think we've been pretty careful to accept what the government would describe as a wide swath of reasonableness on the part of defense counsel before we conclude that it's ineffective. I agree that that is often the standard used by this Court in cases of ineffectiveness. I also believe that... I don't remember any case in which a legal argument as tenuous as the one you described, or even a reasonable but not minority view that was not asserted was held to be ineffective assistance in counseling. Other than Schmidt... No, I'm talking about this Court. You're correct. Thank you. But I would refer the Court to Weingarten, where the inter-foreign travel was thrown out by Second Circuit. And although it was a B case, they spoke of in foreign commerce as not being able to regulate travel between two different countries. And that, of course, I think was Belgium and Israel. Thank you. Thank you. Mr. Hart, you were appointed by this Court to represent the appellant. Thank you for your assistance.
judges: Tatel, Millett, Silberman